## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| JOAN DOE, Individually and <br> as natural mother and next friend of <br> her minor daughter, JANE DOE <br><br> **Plaintiffs** <br><br> **V.** <br><br> MILLER COUNTY, ARKANSAS; County <br> Judge, ROY J. MCNATT, Justices of the <br> Peace, BOBBY FERGUSON, JOE <br> GILLENWATER, WILLIAM GREEN, <br> JOHN D. HALTOM, JIMMY HARDIN, <br> JIMMY HICKEY, HAZE HUDSON, <br> FLOYD DEAN LANGDON, THORNTON <br> MITCHELL, ERNEST PENDER <br> AND LOIS TOOMBS; JOANN SMITH, <br> Administrator of the Lantz Lurry Juvenile <br> Detention Center; VERSIA MILES, <br> Correction Officer, in their individual <br> and official capacities <br><br> **Defendants** | § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:06-CV-04030-JLH <br> **Jury Trial** |

### PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT *(REDACTED)*

TO THE HONORABLE COURT:

COMES NOW Joan Doe, Individually and as natural mother and next friend of her minor daughter, Jane Doe (hereafter "minor child"), who states the following as the basis for her complaint:

#### Preliminary Statement

1.     The Plaintiffs will use the designated name of Joan and Jane Doe, respectively, to maintain their rights of privacy.

The minor child is a ten year old girl residing with her natural mother, Joan Doe, in Miller



County, Arkansas. On October 12 and 13, 2005, the minor child was confined in a detention cell at the Lantz Lurry Juvenile Detention Center ("JDC") where she was brutally and repeatedly sexually assaulted by an older girl known to correction officers and administrative personnel of the detention center to have a history of sexually assaultive behavior.

2.     This action is brought under 42 USC Section 1983 which provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation, under color of state law, of any rights, privileges or immunities secured by the Constitution and laws of the United States of America.

3.     Specifically, Plaintiff contends that the minor child was denied substantive due process and equal protection of the laws and subjected to cruel and unusual punishment in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

## Jurisdiction and Venue

4.     Jurisdiction over the constitutional claims for which redress is sought is provided by 42 USC Section 1983 is conferred on this Court by 28 USC § 1343(a)(3).   Federal question jurisdiction is also conferred on this Court by 28 USC § 1331 because this action arises under the United States Constitution.  Venue is proper in this Court under 28 USC § 1391(b).

## Parties

Plaintiffs

5.     Joan Doe and her minor daughter, Jane Doe, are citizens of the United States and residents of Miller County, Arkansas.

Defendants

6.     Miller County, Arkansas has appeared and answered the Original Complaint.

7.   County Judge, Roy J. McNatt; and Justices of the Peace, Bobby Ferguson, Joe Gillenwater, William Green, John D. Haltom, Jimmy Hardin, Jimmy Hickey, Haze Hudson, Floyd Dean Langdon, Thornton Mitchell, Ernest Pender and Lois Toombs, (hereafter "the governing officials") have appeared and answered the Original Complaint.

8.   Defendant, JoAnn Smith, has appeared and answered the Original Compliant.

9.   Defendant Versia Miles, has appeared and answered the Original Complaint.

Facts

10.   In January of 2005, the Arkansas Juvenile Standards Commission called the Lantz Lurry Juvenile Detention Center "the worst juvenile facility in the state." This was after many promises by past and current County Judges, Justices of the Peace and JDC Administrators that the facility was "improving," staffed with "better-trained detention workers" and a facility that created a "safe environment for the children of Miller County." These promises were not only false but intentionally designed to cover-up prior acts of violence by more aggressive juvenile detainees upon other detainees, and acts of corporal punishment and sexual assault by detention workers upon juvenile delinquents.

11.   On October 12, 2005, the Lantz Lurry Juvenile Detention Center located in Texarkana, Miller County, Arkansas, assumed custodial control of the minor child. Plaintiff was told that her daughter would be detained in a private cell. The cell in which the minor child was placed did not have a toilet. During the night the minor child needed to urinate and did so in the sink or on the floor of her cell.

12.   At all relevant times Versia Miles was employed by Miller County as a correction officer at the JDC. Miles discovered that the child had urinated. As punishment for doing so, Miles

placed the child in a cell with an older girl who Miles, JoAnn Smith and other detention center personnel knew or reasonably should have known had a history of being sexually aggressive and assaultive.

13.    The minor child was detained throughout the evening of October 12 and morning of October 13, 2005 in the same cell with an older detainee.    At no time did any employee of the detention center ask or determine if the minor child's safety was being threatened by the older detainee.   At no time was she separated from a known assailant.  Unfortunately, throughout that evening and early morning hours, the minor child was brutally and repeatedly sexually assaulted by the older detainee.

14.    Jane Doe was not an adjudicated juvenile delinquent.    Rather, she was a member of a Family in Need of Services (FINS).  Under state law, Ark. Stat. Ann. 9-27-336(a)(1)(C)(i) or 9-27-336(a)(2)(C)(i), the JDC was prohibited from housing a FINS member with an adjudicated delinquent.  Additionally, the JDC had never before detained a child as young as Jane Doe. To make matters worse, the JDC ultimately put Jane Doe into a cell with the meanest, most vicious delinquent in the facility.  The older, sexually assaultive detainee (hereafter referred to as "SF") had a rap sheet within the JDC that clearly demonstrated that any child put in the same cell with her was at risk for being abused.  SF had demonstrated such abnormally violent behavior prior to October 12, 2005, that adult employees were afraid of her.  In fact, the Administrator, JoAnn Smith, had written reports that SF had "exhibited bizarre behavior on many occasions" and appeared to have "serious mental issues".  For example:

•    On June 5, 2005, SF was fighting with another detainee.  When confronted by a detention worker, SF said she was going to "beat her a.." in reference to the other detainee.  SF then proceeded to beat her own head against a wall.  This was observed

by Administrator Smith.

- On August 9, 2005, SF exited a restroom and became so aggressive that detention guards had to handcuff her and threaten to call the Texarkana Arkansas Police Department before SF returned to her cell. Again, this was observed by Administrator Smith.
- On September 7, 2005, it was reported by Versia Miles that SF was throwing another detainee around the room and trying to "finger her private parts." Miles believed the detainee to be truly terrified of SF.
- On September 9, 2005, it was reported that SF and another detainee were planning to escape.
- On September 10, 2005, SF began calling a detention worker "b...." and threatening to "kick your a..." SF refused an order to return to her cell. SF was forcibly returned to her cell by two male guards. She then began to repeatedly turn the light switch on and off. Then, she began to trash the entire pod and screamed obscenities at the detention workers.
- On September 17, 2005, SF refused a request to remove her mattress from her cell. She became belligerent with a detention worker and when locked in her cell she began to hit her head on the wall.
- On September 20, 2005, two detainees reported that SF always kicked and hit them.
- On September 20, 2005, SF was observed biting off her toenails. Another detainee asked SF to bite off her toenails and she did so. In response to this request, Administrator Smith noted "SF has exhibited bizarre behavior such as this many times."
- On September 20, 2005, a detainee reported that SF had threatened to rape her. In response to this report, Administrator Smith noted "SF appears to have some serious mental issues."
- On October 11, 2005, while the detention worker on duty took a break, SF kicked open the door to her cell; got the master key; and, unlocked the cells in the pod.

15. SF was a juvenile delinquent. Jane Doe was a member of a FINS family. Ark. Stat. Ann. 9-27-336(a)(1)(C)(i) and 9-27-336(a)(2)(C)(i) prohibits a FINS member from being held in a facility that detains juvenile delinquents. With deliberate indifference to the constitutional rights of Jane Doe, and with total disregard of state law mandating that a FINS member not be held with juvenile delinquents, Versia Miles and every JDC employee on duty during Jane Doe's detention, forced her to be housed with the meanest girl in the facility. All employees of the JDC on duty on October 12-13, 2005, had the absolute duty to protect Jane Doe,

including removing her from the cell with SF. Each JDC employee on duty failed to protect Jane Doe in violation of her substantive due process rights. As a result, the minor child was brutally and repeatedly sexually assaulted.

16.    The minor child has suffered severe and permanent physical and emotional injuries as a direct or proximate result of the JDC's failure to afford her the minimum constitutional rights and privileges that a state penal institution is required to provide a felon. Here, the minor child was a mere FINS member, not a felon. The Defendants failed to protect her in violation of her substantive due process rights afforded by the Fifth and Fourteenth Amendments of the United States Constitution. Also, the minor child was subjected to cruel and unusual punishment in violation of the Eighth Amendment.

17.    Miller County, acting through its governing officials, has been aware of the security deficiencies at the JDC for a long time. The inability of the JDC to protect the minor child was not an isolated incident. Rather, it was the result of an intentional, documented, well-known and "eyes closed" policy and practice to ignore the personal safety of minor children confined within the detention center. Miller County was well aware that certain children were subjected to physical and emotional violence, threats of violence, abuse and assaultive behavior by older and more dangerous detainees.

18.    Miller County, acting through its governing officials, had been repeatedly warned by prior administrators, the Miller County Prosecuting Attorney's office, other public officials and private citizens, of the deficiencies that existed at all levels of the JDC. Despite repeated warnings that certain children were being subjected to physical and emotional violence, the County ignored these warnings and failed to implement the proper hiring, training and

supervision of the JDC's administrative personnel and correction officers, or take steps to protect the detainees. As a direct and proximate result the minor child was brutally and repeatedly sexually assaulted.

<u>Violations of Substantive Due Process - First Cause of Action</u>

19.     The minor child had a constitutionally protected liberty interest in her personal safety once the JDC assumed and exercised custodial care. The JDC, acting through its power to restrain an individual's freedom by way of incarceration, institutionalization or other similar restraint of the minor child's personal liberty, assumed the constitutional duty to protect her from dangers. The minor child's substantive due process right is guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. This right was grossly violated by the acts and omissions of the Defendants. The Defendants are jointly and severally liable for this constitutional deprivation and the resulting damages.

<u>Second Cause of Action</u>

20.     It is a substantive due process violation to confine detainees or arrestees in unsafe conditions. The Defendants failed to afford a troubled ten year old child the minimal constitutional protections afforded a convicted felon. In particular, the Defendants had no authority to punish the minor child by housing her with a known sexually assaultive older child. The Defendants are jointly and severally liable for this constitutional deprivation and the resulting damages.

<u>Third Cause of Action</u>

21.     The due process clause of the Fifth Amendment prohibited the Defendants from punishing a FINS member or detainee in a juvenile detention center. The acts of Versia Miles, while in

the course and scope of her employment, recklessly endangered a ten year old child and caused her to be sexually assaulted. This resulted from her punishing the child for urinating in a cell that did not have a toilet. This right was grossly violated by the acts and omissions of the Defendants. The Defendants are jointly and severally liable for this constitutional deprivation and the resulting damages.

22.    The constitutional deprivations committed by Miles were so egregious that her employment was immediately terminated by JoAnn Smith and Miller County, Arkansas.

23.    The wrongful acts and omissions of the Defendants demonstrate a conscious and deliberate indifference to the minor child's constitutional rights. The Defendants acted willfully, wantonly and maliciously for which they are liable for punitive damages.

Municipal Liability - Fourth Cause of Action

24.    The County Judge and Justices of the Peace (hereafter "the governing officials") were the duly elected representatives of Miller County, Arkansas, at all times relevant to the causes of action pled by the Plaintiff. As such, they had ultimate responsibility and authority for the management and operation of the JDC. Their duties included ensuring that all citizens, including the minor child, were treated in accordance with minimum constitutional requirements when confined within the JDC. Their duties also included the establishment and enforcement of policies, procedures and practices that prohibit the confinement of less dangerous detainees, such as the minor child, with other detainees known to be violent and sexually assaultive. Their duties included the hiring, retention, training and supervision of administrators, management personnel and correction officers who would ensure that all citizens, including the minor child, were afforded their minimum constitutional rights,

including the substantive due process right to protect the minor child from other detainees known to be dangerous.

25.    The wrongful acts and omissions of Versia Miles described above were in compliance with the actual policies, procedures, practices and customs of Miller County, Arkansas and the governing officials. Specifically, Plaintiff contends that Miller County, Arkansas and the governing officials empowered Versia Miles with unfettered discretion to expose the minor child to an unreasonable risk of harm by confining her in a detention cell with an older detainee who had a known history of being sexually assaultive.

26.    The deficient policies, procedures, practices and customs of Miller County, Arkansas and the governing officials, as they relate to the management and operation of the JDC, were a producing and proximate cause of the constitutional deprivations and damages suffered by the minor child.

27.    Miller County, Arkansas and the governing officials failed to provide JoAnn Smith, Versia Miles, and other JDC employees with adequate supervision. The grossly inadequate supervision resulted from and was caused by Miller County's and the governing officials' deliberate indifference to the minor child's right to be free from attacks of physical violence by other detainees with a known history of being sexually assaultive. The grossly inadequate supervision by Miller County and the governing officials was a producing and proximate cause of the constitutional deprivations and damages suffered by the minor child.

28.    Miller County and the governing officials failed to provide JoAnn Smith, Versia Miles, and other JDC employees with adequate training concerning the segregation of certain detainees, such as the minor child, from other detainees with a known history of being sexually

assaultive. This grossly inadequate training resulted from and was caused by Miller County's and the governing officials' deliberate indifference to the minor child's right to be free from attacks of physical violence by other detainees. The grossly inadequate training was a producing and proximate cause of the constitutional deprivations and damages suffered by the minor child.

29. Based on information and belief, Miller County, Arkansas and the governing officials had actual or constructive knowledge of acts and omissions of misconduct by Versia Miles and other correction officers at the JDC and had acquiesced and ratified the misconduct of Versia Miles and other officers by failing to discipline them.

Fifth Cause of Action

30. JoAnn Smith was the Administrator of the JDC at all relevant times. As such, she was specifically delegated the daily responsibility and duty to manage and operate the facility. This included the responsibility and duty to ensure that detainees were not punished by correction officers. Also, Smith had a responsibility and duty to ensure that correction officers did not confine certain detainees, such as the minor child, with other detainees who had a known history of being sexually assaultive.

31. Smith's failure to establish and enforce rules mandating that less dangerous detainees be segregated from more dangerous detainees was a denial of the minor child's right to personal security protected by the due process clause of the United States Constitution. Further, the acts and omissions of JoAnn Smith were the producing and proximate cause of the physical and emotional injuries and damages suffered by the minor child.

32. JoAnn Smith also had a responsibility and duty to ensure that correction officers such as

Versia Miles did not punish detainees in violation of their substantive due process rights. The acts and omissions of Smith in failing to establish and enforce rules restricting correction officers such as Miles from punishing minor detainees was a violation of the right to personal security held by the minor child and protected by the due process clause. Smith's failure to establish and enforce such rules was a producing and proximate cause of the constitutional deprivations and damages suffered by the minor child.

Sixth Cause of Action

Defendants Internal Admission Procedures and the Arkansas Juvenile Code

33.   Plaintiff alleges that Miller County, the "governing officials," JoAnn Smith, and Versia Miles violated their own written rules for "Admission, Procedure and Criteria" and Ark. Stat. Ann. 9-27-336(a)(1)(C)(i) and 9-27-336(a)(2)(C)(i). In particular, a juvenile, such as the minor child, who is alleged to be or adjudicated a "member of a family in need of services" shall not be placed or detained in a facility utilized for the detention of alleged or adjudicated delinquent juveniles, unless separated from detained juveniles charged or held for delinquency. Defendants have admitted that Jane Doe was a member of a FINS family. Thus, the facility should not have placed Jane Doe in a cell with a juvenile delinquent such as SF. To do so was a violation of state law and, the knowing violation of Section 9-27-336(a)(1)(C)(i) or 9-27-336(a)(2)(C)(i) constitutes deliberate indifference.

34.   All Defendants violated this basic safety procedure by negligently, intentionally, knowingly, and, or recklessly placing Jane Doe in a cell with a juvenile known to be sexually and physically assaultive. Based on information and belief, the Defendants ignored this mandated detention limitation and exposed the minor child to an increased risk of harm, a risk that

resulted in the minor child being repeatedly and brutally sexually assaulted by the older detainee.

35.   All Defendants were acting under color of state law at all times relevant hereto.

Damages

36.   Joan Doe is the natural mother and guardian of the minor child. As such, she has sole responsibility for her daughter's medical, educational and social welfare. As a result of the brutal attacks suffered by the minor child, Joan Doe has incurred reasonable and necessary medical, psychiatric and psychological expenses for the treatment of the injuries suffered by her daughter. Joan Doe will continue to incur and be responsible for these reasonable and necessary expenses until the minor child reaches the age of 18 years. It is reasonably certain that the minor child will continue to incur these expenses through and beyond the age of 18 years. Despite the fact that these expenses are reasonably related to the incident that occurred while the minor child was detained at the JDC, the Defendants have failed and refused to acknowledge responsibility. This has caused Joan Doe to suffer a significant financial hardship.

37.   Also, Joan Doe has suffered the extreme emotional anguish that would reasonably be expected of any loving parent because of the brutal assault on her daughter.

38.   The minor child has been devastated by what happened to her. Her damages proximately caused by the Defendants include physical pain, mental anguish, terror, grief, humiliation, embarrassment, loss of liberty, all of which are reasonably certain to continue to be suffered by her in the future.

39.   All damages suffered by the Plaintiff and her minor daughter were the result of the

constitutional deprivations proximately caused by all Defendants.

40.     The individual Defendants' wrongful acts and omissions were intentional, willful, reckless and malicious rendering appropriate the award of punitive damages.

Jury Demand

41.     The Plaintiff demands a trial by jury on all issues of fact.

Conclusion

WHEREFORE, Joan Doe, individually and as natural mother and next friend of her minor daughter, Jane Doe, prays that this honorable Court:

(a)     Enter judgment in behalf of the Plaintiff and the minor child against all Defendants, jointly and severally, for compensatory damages in an amount sufficient to fully and completely compensate them for their actual damages proximately caused by the Defendants;

(b)     Enter judgment in behalf of the Plaintiff and the minor child against the Defendants in their individual capacities for punitive damages in an amount sufficient to punish them, for their misconduct in this case and in an amount sufficient to deter them and others from doing the same;

(c)     Grant the Plaintiff and the minor child a reasonable attorney's fee and court costs reasonably incurred in the prosecution of their claims, as authorized by 42 USC Section 1988(b);

(d)     Grant the Plaintiff and the minor child any and all additional relief to which they may appear to be entitled including pre-judgment interest, post judgment interest and taxable court costs.

Respectfully submitted,

By:   _____
Robert W. Weber - *Lead Attorney*
Arkansas State Bar No. 81227

SMITH WEBER, L.L.P.
5604 Summerhill Road, Suite 3
P.O. Box 6167
Texarkana, TX  75505-6167
Telephone:      903-223-5656
Facsimile:       903-223-5652
E-mail:           bweber@smithweber.com

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of August, 2006, a true and correct copy of the above and foregoing was served by electronic service to:

C. Burt Newell
Arkansas Public Entities Risk Management Association
211 Hobson Avenue
P.O. Box 1558
Hot Springs National Park, AR   71902-1558

_____
Robert W. Weber